IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHESTER DREW LARIMORE, | No. CIV S-09-2389-WBS-CMK-P |
| Petitioner, | |
| vs. | FINDINGS AND RECOMMENDATIONS |
| JAMES YATES, | |
| Respondent. | |
| _____ / | |

        Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Pending before the court are petitioner's petition for a writ of habeas corpus (Doc. 1), respondent's answer (Doc. 11), and petitioner's reply (Doc. 13).

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A.  **Facts**[1]

The state court recited the following facts, and petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct:

> Around 1:30 a.m. on December 1, 2003, Roseville Police Department Sergeant Troy Bergstrom stopped a red Isuzu Rodeo for traffic violations. Defendant was the driver. When asked his name, defendant told Sergeant Bergstrom his name was John Montoya.
> Sergeant Bergstrom conducted a pat-down search of defendant and found a large wallet or checkbook in his back left pocket. A backup officer searched the wallet and found several identification cards, credit cards, and other items with different names on them, including defendant's. The VIN on the Isuzu, which did not match the license plates, came back as a stolen vehicle.
> The Isuzu was then searched. Among the numerous items found in the search were: completed checks from various accounts made out to several different identifies; several checkbooks, again in various names; false identification cards in various stages of completion; laminated paper used for making identification cards; several credit card and driver's license applications; and a hotel bill from the Circus Circus in Reno bearing the name of the registered owner of the stolen Isuzu. Officers also found a checkbook in the name of Liquita Crouch containing 12 counterfeit bills.
> A glass pipe for smoking drugs was found in the front pocket of a shirt on the front seat of the Isuzu. The Isuzu also contained a black bag with various paperwork, including a check register, checks, a mutual fund statement for Lisa Thinger, a registration for a 1969 Ford; title to both a 1994 Plymouth and a 1989 Ford; a seller's permit from the Board of Equalization for Stephen Pegram and Harold Simms; and a community college completion certificate for Brian Charles.
> Officers also found a folder containing: counterfeit money; uncompleted counterfeit money; copies of checks made to different persons and companies; a registration for an officer's class on narcotics; another folder with information on Lisa Thinger; an identification card for Gary Junior Freena; a piece of paper with what appeared to be credit card numbers; and an invoice from a golf club.
> An expert in identify theft testified that, in his opinion, the Isuzu was a "mobile identity theft lab," and defendant was pretending to be other persons in order to avoid being caught. Some of the identity cards were possessed for the purpose of sale.

---

[1]  Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. See id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

>A computer monitor, printer, scanner, and a laptop computer were found in the back of the Isuzu.  Secret Service Special Agent Nicole Pfeiffer, an expert in genuine currency and counterfeiting apparatus, testified that the computer gear and counterfeit currency seized from the Isuzu were sufficient to allow the manufacturing of counterfeit money.
>
>Defendant testified on his own behalf.  According to defendant, when he was arrested he had been working as a confidential informant for an undercover agent named Carlos Ruiz and a Drug Enforcement Agency agent named Robert Palimino.  Except for the methamphetamine pipe, which was defendant's, all of the items found in the Isuzu had been placed there by Manny Olguin, who manufactured false identifications and counterfeit money, and whom defendant had been trying to set up for an arrest.

**B.    Procedural History**

Petitioner was convicted following a jury trial of:  unlawfully driving or taking a vehicle; displaying false license plates; false imprisonment; two counts of possession of a forged driver's license; possession of another's identifying information; possession of a completed check with intent to defraud; two counts of possession of another's access card information with intent to use it fraudulently; three counts of possessing a blank check with the intent to defraud; forgery or counterfeiting of a public seal; making, uttering, or passing counterfeit paper; possession of a counterfeiting apparatus; acquiring four or more access cards with the intent to defraud; and possession of a methamphetamine pipe.  Petitioner admitted five prior serious or violent felony convictions.  The trial court denied petitioner's motion to dismiss the prior strikes and petitioner was sentenced to an indeterminate term of 75 years to life in state prison.

On direct appeal, petitioner argued that his sentence constitutes cruel and unusual punishment.  The California Court of Appeal rejected petitioner's argument and affirmed the conviction and sentence.  The California Supreme Court denied direct review without comment or citation.  Prior to the completion of direct review, petitioner filed a state post-conviction habeas action in the Placer County Superior Court.  That petition was denied with the following comment by the court: "The petition consists entirely of a combination of unintelligible and conclusory allegations and thus fails to state a prima facie claim for relief."  Petitioner then filed a second habeas petition in the Placer County Superior Court, which the court denied in a

reasoned decision.  Petitioner then filed a third petition in the Placer County Superior Court, which was also denied in a reasoned decision.  State post-conviction petitions filed in the California Court of Appeal and California Supreme Court were both denied without comment or citation.

According to respondent, a number of the claims raised in the instant federal petition are unexhausted.  Without waiving this defense, respondent urges this court to deny relief on such claims because they are clearly meritless.  See 28 U.S.C. § 2254(b)(2) (stating that meritless claims can be denied even though such claims are unexhausted).

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable.  See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist."  Pirtle, 313 F. 3d at 1167.

4

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

///
///
///

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme Court cases to the facts of a particular case is not reviewed under the "contrary to" standard. See id. at 406. If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error. See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002). If so, the next question is whether such error was structural, in which case federal habeas relief is warranted. See id. If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless. See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case. See Wiggins v. Smith, 539 U.S. 510, 520 (2003). While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply. See Williams, 529 U.S. at 408-09. The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law. See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003). An "unreasonable application of" controlling law cannot necessarily be found

even where the federal habeas court concludes that the state court decision is clearly erroneous. See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."  Id. at 75. As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982. The federal habeas court assumes that state court applied the correct law and analyzes whether the state court's summary denial was based on an objectively unreasonable application of that law.  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III.  DISCUSSION

Petitioner raises numerous claims as follows: (1) the trial court violated petitioner's right to confrontation by not allowing the jury to observe witnesses invoking their right not to testify under the Fifth Amendment; (2) ineffective assistance of trial and appellate counsel; (3) the trial court violated petitioner's right to due process by counting as "strikes" felony convictions which were the result of plea bargains; (4) the sentence constitutes cruel and unusual punishment; (5) the trial court erred by failing to notice and remove a juror who was falling asleep during trial; (6) the sentence violates state law prohibiting multiple punishment for the same act; (7) the sentence was improperly enhanced based on factors determined by the judge and not the jury; (8) the trial court erred by failing to sua sponte instruct the jury on third-party culpability; (9) the trial was rendered unfair by the presence of a bailiff nearby while petitioner

testified; and (10) petitioner is actually innocent.

### A.    **Confrontation of Witnesses Invoking the Fifth Amendment**

Petitioner claims that, as part of his right to confront witnesses against him, the jury should have been permitted t observe witnesses invoking their Fifth Amendment rights against self-incrimination. This claim was addressed by the Placer County Superior Court as follows:

> On the second allegation, as best as the court can determine, Petitioner alleges that the court failed to allow the jury see "key defense witnesses plead the fifth amendment." Other than this conclusionary statement, Petitioner has failed to allege how this ruling constitutes a violation of a substantial constitutional right. He has failed to state a prima facie basis for relief.

Citing People v. Harris, 5 Cal.4th 813 (1993), the state court also concluded that the claim was procedurally defaulted in that it could have been raised on direct appeal but was not.

As respondent notes, there is no controlling United States Supreme Court precedent which requires the jury to be present when witnesses invoke the Fifth Amendment. For this reason, federal habeas relief is unavailable. In any event, the court does not see how there could have been any constitutional violation of the right to confrontation given that invocation of the Fifth Amendment is not subject to cross-examination. See United States v. Klinger, 128 F.3d 705, 709 (9th Cir. 1997).

### B.    **Ineffective Assistance of Counsel**

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were

outside the wide range of professional competent assistance.  See id.  In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made."  Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice.  See Strickland, 466 U.S. at 693.  Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id. at 694.  A reasonable probability is "a probability sufficient to undermine confidence in the outcome."  Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000).  A reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed."  Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

The Strickland standards also apply to appellate counsel.  See Smith v. Robbins, 528 U.S. 259, 285 (2000); Smith v. Murray, 477 U.S. 527, 535-36 (1986); Miller v. Keeney, 882 F.2d 1428, 1433 (9th Cir. 1989).  However, an indigent defendant "does not have a constitutional right to compel appointed counsel to press nonfrivolous points requested by the client, if counsel, as a matter of professional judgment, decides not to present those points."  Jones v. Barnes, 463 U.S. 745, 751 (1983).  Counsel "must be allowed to decide what issues are to be pressed."  Id.  Otherwise, the ability of counsel to present the client's case in accord with counsel's professional evaluation would be "seriously undermined."  Id.; see also Smith v. Stewart, 140 F.3d 1263, 1274 n.4 (9th Cir. 1998) (counsel not required to file "kitchen-sink briefs" because it "is not necessary, and is not even particularly good appellate advocacy.")  Further, there is, of course, no obligation to raise meritless arguments on a client's behalf.  See Strickland, 466 U.S. at 687-88.

Thus, counsel is not deficient for failing to raise a weak issue. See Miller, 882 F.2d at 1434. In order to demonstrate prejudice in this context, petitioner must demonstrate that, but for counsel's errors, he probably would have prevailed on appeal. See id. at n.9.

        1.     Trial Counsel

Petitioner argues seven instances of ineffective assistance of trial counsel, as follows: (1) failing to call all of the 33 witnesses petitioner identified while he was representing himself; (2) allowing petitioner to testify after other witnesses had invoked their rights under the Fifth Amendment; (3) failing to object to a sentence enhancement based on prior felony convictions which resulted from plea bargains; (4) failure to bring a Pitchess motion seeking personnel information as to Oakland Police Officer Carlos Ruiz; (5) failing to challenge the chain of evidence as to items found in the Isuzu; (6) failing to seek recusal of the trial judge and prosecutor because petitioner had filed a lawsuit against them in the past; and (7) delegating the defense work to a law partner.[2]

Turning to counsel's decision not to call all the witnesses identified by petitioner when he was representing himself, the record reflects that, at the time of trial, defense counsel informed both the court and petitioner that he would be more selective in his witness list. Petitioner contends that, in making this decision, counsel failed to call "FBI agents and law

---

[2] According to respondent, the first three of these claims are exhausted and the rest are unexhausted. As to those claims addressed by the state court, they were denied with little in the way of analysis. The state court concluded generally:

> The court has reviewed the entire record submitted by the Petitioner. After careful review the court finds that Petitioner has failed to state a prima facie basis that trial counsel's representation fell below an objective standard of reasonableness. In addition, the petition fails to show that there is a reasonable probability that defendant would have had a more favorable result had counsel acted differently. The court is required to give deference to counsel's tactical decisions. The present record does not support a finding that petitioner would have received a different, more favorable result.

As to unexhausted claims, the court may deny such claims if they are clearly meritless. See 28 U.S.C. § 2254(b)(2).

enforcement officers of good standing" who knew the real reasons behind petitioner's activities and who could have established petitioner's actual innocence.  Petitioner's conclusory argument, however, fails to state who the uncalled witnesses are or specifically how their testimony would have bolstered his defense that he was acting lawfully as a confidential informant.  Thus, petitioner has not demonstrated that counsel's tactical decision to be more selective in the defense witness list fell below an objective standard of reasonableness.  Absent such a showing, the court must give deference to counsel's tactical decisions.

Next, petitioner contends that counsel was ineffective for calling him to testify after two other witnesses had invoked their right against self-incrimination.  The court finds that counsel's decision to put petitioner on the stand was not only reasonable but necessary to petitioner's chosen defense that he was acting lawfully as a confidential informant.  As respondent observes: "If Petitioner had declined to testify, he would have been left with absolutely no defense and a mountain of evidence against him."

Next, petitioner argues that trial counsel was ineffective for failing to argue against the use of prior convictions to enhance his sentence.  Petitioner's claim is belied by the record which reflects that defense counsel did in fact challenge the court's finding that the prior convictions counted as "strikes" and that counsel asked the court for leniency.

For the foregoing reasons, the court finds that the state court's denial of petitioner's claims of ineffective assistance of trial counsel was neither contrary to nor an unreasonable application of Strickland.

The court next turns to petitioner's unexhausted claims of ineffective assistance of counsel.  Under 28 U.S.C. § 2254(b), the exhaustion of available state remedies is required before claims can be presented to the federal court in a habeas corpus case.  See Rose v. Lundy, 455 U.S. 509 (1982); see also Kelly v. Small, 315 F.3d 1063, 1066 (9th Cir. 2003); Hunt v. Pliler, 336 F.3d 839 (9th Cir. 2003).  "A petitioner may satisfy the exhaustion requirement in two ways:  (1) by providing the highest state court with an opportunity to rule on the merits of the

11

claim . . .; or (2) by showing that at the time the petitioner filed the habeas petition in federal court no state remedies are available to the petitioner and the petitioner has not deliberately by-passed the state remedies." Batchelor v. Cupp, 693 F.2d 859, 862 (9th Cir. 1982) (citations omitted). The exhaustion doctrine is based on a policy of federal and state comity, designed to give state courts the initial opportunity to correct alleged constitutional deprivations. See Picard v. Connor, 404 U.S. 270, 275 (1971); see also Rose, 455 U.S. at 518.

Given considerations of comity, the court finds that dismissal of the unexhausted ineffective assistance of counsel claims is appropriate. In particular, because the claims were never presented to the state court, there is no record on which to base federal habeas review.

### 2. Appellate Counsel

Petitioner argues that appellate counsel was ineffective because only one issue was raised on appeal – cruel an unusual punishment – and other issues were ignored. Petitioner has not, however, identified which claims appellate counsel should have raised or that, had such claims been raised, the outcome would likely have been any different. See Smith . Robbins, 528 U.S. 259, 288 (2000) (holding that the petitioner must show that claims not raised are clearly stronger than those presented on appeal). Given petitioner's lack of specificity in outlining the factual bases of this claim, the court cannot say that the state court's denial was either contrary to or an unreasonable application of the Strickland standard.

## C. Sentence Challenges

Petitioner raises several claims challenging his sentence. First, he asserts that his right to due process was violated when prior felony convictions obtained through plea bargains were used to enhance his current sentence. Petitioner contends that such use of the prior convictions violates the terms of the various plea bargains. Second, petitioner argues that the sentence constitutes cruel and unusual punishment in violation of the Eighth Amendment. Third, petitioner argues that the sentence violates the rule of Apprendi and its progeny because a judge, and not the jury, determined the existence of the prior strikes used to enhance his sentence.

Finally, petitioner argues that his sentence violated California's prohibition under California Penal Code § 654 on multiple punishments for a single act or indivisible course of conduct.

### 1.     Use of Prior Felony Convictions Arising from Plea Bargains

Petitioner challenges the use of prior felony convictions as "strikes" to enhance his current sentence because those prior convictions were the result of plea bargains. Petitioner reasons that this was improper because he was not informed of this possible future use of the conviction at the time he entered into the original plea bargain. Essentially, petitioner argues that he is being subject to double punishment – first for the underlying "strike" felony convictions and second for the enhancement to the current sentence such "strikes" allows.

This claim is foreclosed as a matter of law. The United States Supreme Court has concluded that recidivist statutes do not violate double jeopardy because the enhanced punishment imposed for the later offense is not viewed as either a new jeopardy or additional penalty for the earlier crimes. Rather, enhanced sentences constitute "a stiffened penalty for the latest crime, which is considered to be an aggravated offense because a repetitive one." Witte v. United States, 515 U.S. 389, 400 (1995). Petitioner's claim should be denied on the merits.

### 2.     Cruel and Unusual Punishment

Petitioner argues that his sentence of 75 years to life constitutes cruel and unusual punishment in violation of the Eighth Amendment. In Lockyer v. Andrade, the Supreme Court concluded that habeas relief was not available on a claim that two consecutive sentences of 25 years to life in prison constituted cruel and unusual punishment because there is no clearly established Supreme Court precedent. See 538 U.S. 63, 72. The Court stated:

> Our cases exhibit a lack of clarity regarding what factors may indicate gross disproportionality. . . . [¶] Thus . . . the only relevant clearly established law amenable to the "contrary to" or "unreasonable application of" framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the "exceedingly rare" and "extreme" case.

Id. at 72-73.

Thus, unless the case presents the "exceedingly rare" or "extreme" situation, application of the gross disproportionality principle is unclear and, for this reason, habeas relief is not available. Cf Gonzalez v. Duncan, __ F.3d __ (9th Cir. Dec. 30, 2008) (applying the gross disproportionality principle to term of years sentence to grant habeas relief only because the case presented the "exceedingly rare" and "extreme" situation).

In Rummel v. Estelle, the Supreme Court upheld an indeterminate life sentence where the defendant had obtained $125.70 by false pretenses and had two prior serious felony convictions. See 455 U.S. 263, 285 (1980). In Harmelin v. Michigan, the Court upheld an indeterminate life sentence where the defendant possessed 650 grams of cocaine. See 501 U.S. 957, 1009 (1983). And in Ewing v. California, the Court rejected an Eighth Amendment argument where the defendant had been sentenced to 25 years to life for grand theft with prior serious felony convictions. See 538 U.S. 11, 30-31 (2003). If the sentences and facts in Rummel, Harmelin, and Ewing did not present the exceedingly rare situation in which gross disproportionality could be found, then neither does the case at bar.

Based on the foregoing, the court finds that the state court's denial of this claim was neither contrary to nor an unreasonable application of clearly established United States Supreme Court precedent.

3.   Existence of Prior Felony Convictions Determined by Judge not Jury

In Apprendi v. New Jersey, 530 U.S. 466 (2000), the Court held that the Sixth Amendment requires that any fact – other than a prior conviction – that exposes a defendant to a sentence in excess of the relevant statutory maximum must be found by a jury beyond a reasonable doubt, and not by a judge by a preponderance of the evidence. Petitioner asserts that this rule was violated when the judge, not jury, determined the existence of prior felony convictions in his case. Petitioner's claim lacks merit because Apprendi carves out an exception for prior convictions, which need not be found by a jury. Moreover, the record reflects that petitioner waived any right to a jury trial on the priors and agreed to leave the matter to judicial

determination.  Though, as respondent notes, this claim was not exhausted in state court, the claim should nonetheless be denied because it is clearly meritless.  See 28 U.S.C. § 2254(b)(2).

### 4.     State Multiple Punishment Law

Petitioner argues that his sentence violates California Penal Code § 654 which prohibits multiple punishments for a single act or an indivisible course of conduct.  This claim was raised in petitioner's second post-conviction habeas action filed in the Placer County Superior Court.  Citing to In re Clark, 5 Cal.4th 750 (1993), the state court determined that the claim was procedurally defaulted: "Petitioner's attempt to relitigate the same claims and his attempt to present additional claims that could have been presented in his earlier petition is an abuse of the writ."  Respondent argues: (1) the claim is procedurally barred; (2) the claim is not cognizable because it is a claim based on state law; and (3) the claim lacks merit.

Based on concerns of comity and federalism, federal courts will not review a habeas petitioner's claims if the state court decision denying relief relies on a state law ground that is independent of federal law and adequate to support the judgment.  See Coleman v. Thompson, 501 U.S. 722 (1991); Harris v. Reed, 489 U.S. 255, 260-62 (1989).  However, a discretionary state rule is not adequate to bar federal habeas corpus review.  See Siripongs v. Calderon, 35 F.3d 1308 (9th Cir. 1994).  Generally, the only state law grounds meeting these requirements are state procedural rules.  Even if there is an independent and adequate state ground for the decision, the federal court may still consider the claim if the petitioner can demonstrate:  (1) cause for the default and actual prejudice resulting from the alleged violation of federal law, or (2) a fundamental miscarriage of justice.  See Harris, 489 U.S. at 262 (citing Murray v. Carrier, 477 U.S. 478, 485, 495 (1986)).

Addressing first whether the California successive petition default bars review in this case, the court concludes that the default imposed in this case in 2008 is independent.  See Bennet v. Mueller, 322 F.3d 573 (9th Cir. 2003) (holding that the application of defaults under Clark has rested on an independent state procedural ground since the California Supreme Court's

1  decision in In re Robbins, 18 Cal.4th 770 (1998)).

2         The court next turns to whether the Clark successive petition default is adequate. 3  For a state procedural default to be adequate, it must be well-established and consistently 4  applied.  See Bennett, 322 F.3d at 583.  In 1998, the California Supreme Court decided Robbins, 5  and stated that "Clark serves to notify habeas corpus litigants that we shall apply the 6  successiveness rule when we are faced with a petitioner whose prior petition was filed after the 7  date of finality of Clark."  See Robbins, 18 Cal.4th at 788 n.9.  Thus, Clark put habeas petitioners 8  in California on notice that the successiveness bar would be consistently applied.  As to whether 9  the successive petition bar is well-established, the California Supreme Court acknowledged in 10  1993 that certain of its procedural rules – including the successive petition default – had been 11  considered "discretionary" and "subject to undefined exceptions."  In re Clark, 5 Cal. 4th at 768; 12  see also In re Harris, 5 Cal. 4th 813 (1993).  Following Clark, the Ninth Circuit concluded that 13  these  procedural rules do not constitute adequate state grounds and held that a pre-Clark 14  procedural default will not preclude federal habeas review.  See Siripongs v. Calderon, 35 F.3d 15  1308, 1318 (9th Cir. 1994).  But, for successive petition defaults imposed after Clark was 16  decided in 1993, the default is well-established.  See id.

17         In this case, the successive petition default imposed by the state court in 2008 is 18  independent, consistently applied, and well-established.  For this reason, the court agrees with 19  respondent that the default bars federal habeas corpus review of the claim.

20         The court also agrees with respondent that, in any event, the claim is not 21  cognizable.  A writ of habeas corpus is available under 28 U.S.C. § 2254 only on the basis of a 22  transgression of federal law binding on the state courts.  See Middleton v. Cupp, 768 F.2d 1083, 23  1085 (9th Cir. 1985); Gutierrez v. Griggs, 695 F.2d 1195, 1197 (9th Cir. 1983).  It is not 24  available for alleged error in the interpretation or application of state law.  Middleton, 768 F.2d at 25  1085; see also Lincoln v. Sunn, 807 F.2d 805, 814 (9th Cir. 1987); Givens v. Housewright, 786 26  F.2d 1378, 1381 (9th Cir. 1986).  Habeas corpus cannot be utilized to try state issues de novo.

See Milton v. Wainwright, 407 U.S. 371, 377 (1972).

### D. Failure to Notice and Remove Sleepy Juror

According to petitioner, his trial was rendered fundamentally unfair when the trial court failed to notice and then remove a juror who had fallen asleep during trial. This claim, however, is impossible to evaluate because, as petitioner concedes, his counsel intentionally decided not to raise the issue with the judge.[3] Thus, no record was ever made regarding the issue. Absent a record, there is no basis upon which to conclude that the trial court committed constitutional error. See e.g. United States v. Springfield, 829 F.2d 860 (1987). Though, as respondent notes, this claim was not exhausted in state court, the claim should nonetheless be denied because it is clearly meritless. See 28 U.S.C. § 2254(b)(2).

### E. Instructional Error

Petitioner asserts that the trial court erred by failing to sua sponte instruct the jury on third-party culpability. The court finds that there could have been no error because third-party culpability was not an issue in the case. Petitioner's defense at trial was that he was not guilty of criminal activity because he lacked criminal intent. Specifically, he argued that he was acting legally as a confidential informant in a sting set-up operation. Thus, the jury could have believed either that petitioner was acting legally as an informant, or that he was not an informant and was in fact acting illegally. Petitioner's defense in no way pointed to an absent third-party. Because there was no evidence adduced at trial which would have suggested a plausible third-party culpability defense, petitioner was not deprived his right to present the defense of his choice when the trial court failed to sua sponte instruct on such a defense. See Matthews v. United States, 485 U.S. 58, 63 (1988) (holding that a defendant is entitled to an instruction on an entrapment defense where there was sufficient evidence from which a reasonable jury could find entrapment). Though, as respondent notes, this claim was not exhausted in state court, the claim

---

[3] Petitioner does not argue ineffective assistance of counsel in this regard.

17

should nonetheless be denied because it is clearly meritless.  See 28 U.S.C. § 2254(b)(2).

### F. Presence of Bailiff Nearby While Petitioner Testified

Petitioner contends that the presence of a court bailiff nearby while he testified rendered the trial unfair.  The court does not agree.  The United States Supreme Court has held that the existence of security guards in a courtroom is not of constitutional significance "so long as their numbers or weaponry do not suggest particular official concern or alarm."  Holbrook v. Flynn, 475 U.S. 560, 569 (1986).   Here, the record reveals that, due to the configuration of the courtroom which placed petitioner within four feet of the jury and in close proximity to the judge while leaving the bailiff over 40 feet away with a counsel table in between, the bailiff requested that he be allowed to sit in a chair closer to petitioner and behind the jury out of their sight.  The trial court granted the request and instructed the jury that they were to draw no inference from the officer's presence.  There is no indication of an excessive number of security personnel or of excessive armament.  In fact, the trial court handled the situation so as to minimize any suggestion of official concern or alarm.  Though, as respondent notes, this claim was not exhausted in state court, the claim should nonetheless be denied because it is clearly meritless.  See 28 U.S.C. § 2254(b)(2).

### G. Actual Innocence

Petitioner claims that he is actually innocent.  At the outset, the court notes that it is unsettled whether a freestanding actual innocence claim is cognizable on federal habeas review.  See House v. Bell, 547 U.S. 518, 554-55 (2006).  Assuming for the moment that such a claim is cognizable, the court finds that petitioner has not made out a prima facie case for relief because he sets forth no showing to "affirmatively prove that he is probably innocent."  Carriger v. Stewart, 132 F.3d 463, 476 (9th Cir. 1997) (en banc).  Petitioner's claim is entirely conclusory and appears to derive from his defense at trial that he is innocent because he was acting lawfully as a confidential informant.  Obviously, the jury did not accept this theory.  As respondent notes: "Petitioner's claim amounts to nothing more than an assertion that the jury wrongly rejected his

defense." Though this claim was not exhausted in state court, the claim should nonetheless be denied because it is clearly meritless.  See 28 U.S.C. § 2254(b)(2).

## IV.  CONCLUSION

Based on the foregoing, the undersigned recommends that petitioner's petition for a writ of habeas corpus (Doc. 1) be denied and that all pending motions be denied as moot.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within 14 days after being served with these findings and recommendations, any party may file written objections with the court.  Responses to objections shall be filed within 14 days after service of objections.  Failure to file objections within the specified time may waive the right to appeal.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: November 19, 2010

CRAIG M. KELLISON
UNITED STATES MAGISTRATE JUDGE